IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY HEIL and PAULA HEIL, | No. C06-02202 MJJ |
| Plaintiffs, | **ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION** |
| v. | |
| WELLS FARGO BANK, a California corporation, | |
| Defendant. | |

Pending before the Court is Plaintiffs Jeffrey and Paula Heil's request for a preliminary injunction.[1] On April 6, 2006, the Court granted Plaintiffs' Application for a Temporary Restraining Order and ordered Wells Fargo to show cause as to why a preliminary injunction should not issue. (Doc. #10.) Defendant Wells Fargo Bank ("Wells Fargo") has filed its Response to the Order to Show Cause (Doc. #24), and Plaintiffs have filed a Reply (Doc. #34). For the following reasons, the Court **GRANTS** Plaintiffs' request for a preliminary injunction.

I.   Background

On March 16, 2006, Plaintiffs Jeffrey and Pauls Heil filed a Complaint against Wells Fargo. (Doc. #1.) In their Complaint, Plaintiffs allege that they entered into a construction loan contract with First Security Bank of Utah to finance the building of their home on a twenty acre sub-parcel of Plaintiffs' 300-acre parcel of land in Utah. On January 13, 1995, Plaintiffs re-financed the First Security

---

[1] At the time of filing, Plaintiffs' Application has not been docketed. The Court is referring to Plaintiffs' Application filed on April 6, 2006.

1  loan with Crossland Mortgage, Inc. Both loans were secured by a deed of trust on a 20-acre parcel of
2  Plaintiffs' land. In November 2000, Crossland merged with Wells Fargo, and Plaintiffs thereafter made
3  their loan payments to Wells Fargo. According to Plaintiffs, during this time, "[D]efendant paid real
4  property taxes to the Iron County Assessor's Office which were not in fact owed; paid real property
5  taxes to the Iron County Assessor's Office in excess of defendant's secured interest; paid insurance on
6  the [s]ubject [p]roperty when there was already insurance in place on the [s]ubject [p]roperty;
7  improperly charged plaintiffs[] late fees, interest and penalties without a legal, factual, or contractual
8  basis; refused to apply payments made by [P]laintiffs to [P]laintiffs' account and improperly charged
9  [P]laintiffs' late fees, interest and penalties on the payments [D]efendant refused to apply to [P]laintiffs'
10 account." At some point thereafter, Wells Fargo initiated a foreclosure action on Plaintiffs' property.
11 Plaintiffs then filed for bankruptcy in the United States Bankruptcy Court in the Central District of Utah.
12 Based on these events, Plaintiffs now the claims against Wells Fargo for: (1) breach of contract; (2)
13 fraud; (3) negligence; (4) breach of the covenant of good faith and fair dealing; and (5) violations of the
14 Truth in Lending Act, 15 U.S.C. § 1601.

15 Concurrent with the filing of their Complaint on March 16, 2006, Plaintiffs also filed an Ex Parte
16 Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction
17 Should Not Issue (Doc. #2). Plaintiffs' counsel indicated that he had served a copy of the Application
18 on Wells Fargo's counsel, Kent W. Plott, via facsimile. (Docs. #8, #9.) On March 20, 2006, the Court
19 granted Plaintiffs' Application for a TRO and directed Wells Fargo to show cause as to why a
20 preliminary injunction should not issue precluding Wells Fargo from foreclosing on Plaintiffs' property.

21 Subsequently, on March 27, 2006, Wells Fargo filed a Conditional Opposition to Plaintiffs'
22 request for preliminary injunction. In their Opposition, Wells Fargo asserted that Plaintiffs had failed
23 to perfect service of the TRO. Specifically, Wells Fargo indicated that Lundberg & Associates, the firm
24 where Mr. Plott is associated, is not authorized to accept service on behalf of Wells Fargo. Accordingly,
25 it argued that Plaintiffs failed to properly serve Wells Fargo as required by the Order Granting the TRO.[2]

---

[2] Additionally, Wells Fargo opposed entry of a preliminary injunction on the grounds that: (1) this Court lacks personal jurisdiction over Wells Fargo; (2) this Court lacks subject matter jurisdiction over this action because it involves foreclosure of properly located in another district; (3) this Court lacks personal jurisdiction over the subject property; and (4) venue in the Northern District of California

1  At the preliminary injunction hearing on March 31, 2006, the Court found that Plaintiffs had failed to
2  properly serve Wells Fargo with the Order granting the TRO. Consequently, the Court vacated the TRO
3  and denied Plaintiffs' request for a preliminary injunction pursuant to Federal Rule of Civil Procedure
4  65(a)(1).

5  Thereafter, on April 6, 2006, Plaintiffs filed a second Ex Parte Application for Temporary
6  Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue. On April
7  6, 2006, the Court granted the TRO and ordered Wells Fargo to show cause as to why a preliminary
8  injunction should not issue. This matter is now before the Court.

9  II.     Discussion

10  Rather than addressing the traditional factors applicable to determining whether a moving party
11  is entitled to a preliminary injunction,[3] Wells Fargo raises several procedural and substantive challenges
12  to Plaintiffs' request for a preliminary injunction. Specifically, in its Response Wells Fargo urges the
13  Court to deny Plaintiffs' request for a preliminary injunction because: (1) Plaintiffs have failed to
14  properly serve the Court's Order granting the TRO; (2) Plaintiffs have failed to post the bond set in the
15  TRO Order; (3) this Court lacks subject matter jurisdiction over this matter because Plaintiffs' Truth in
16  Lending Act is time-barred; (4) this Court lacks personal jurisdiction over Wells Fargo because
17  Plaintiffs have failed to effect service of process; and (5) the Northern District of California is not a
18  proper venue for this action.

19      A.      Service and Posting of Bond and Lack of Personal Jurisdiction

20  Pursuant to the April 6th Order, Plaintiffs were required to serve that Order in accordance with
21  Federal Rule of Civil Procedure 4 and post a bond of $5,000 by 5:00 p.m. on April 7th. At oral
22  argument, Wells Fargo conceded that Plaintiffs had effected service of the TRO and Order to Show
23  Cause. Thus, this is no longer an contested issue. However, at oral argument, Plaintiffs conceded that,
24  despite the fact that they expressly requested that the Court set a $5,000 bond, they had failed to post
25  the bond by the stated deadline. Plaintiffs requested that the Court allow the money in the Plaintiffs'
26  trust account to serve as bond in this matter. The Court denies this request and orders Plaintiffs to post

---

is improper. Because the Court found the issue of service dispositive, it did not reach these issues.

[3] *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994).

a $5,000 bond in accordance with the directives set forth in the Conclusion of this Order. The Court therefore rejects Wells Fargo's challenge.

B.  Lack of Subject Matter Jurisdiction

Next, Wells Fargo argues that this Court lacks subject matter jurisdiction over this matter because Plaintiffs' claim under the Truth in Lending Act - Plaintiffs' only federal claim and the basis for the Court's subject matter jurisdiction in this case - is time-barred.

Pursuant to 15 U.S.C. § 1640(e), "Any action under [the Truth in Lending Act] may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." Wells Fargo argues that, based upon the allegations in Plaintiffs' Complaint, their Truth in Lending Act claim is untimely. In support, Wells Fargo argue that in ¶10 of the Complaint, Plaintiffs allege that, "[p]rior to and after November 14, 2000, Crossland and defendant Wells Fargo Bank engaged in a series of acts which plaintiffs allege constituted . . . violations of the Truth in Lending Act[], set forth at 15 U.S.C. § 1601 *et seq*." Wells Fargo also proffer that in ¶12 of the Complaint, Plaintiffs allege that, "[a]s a result of [D]efendant's unlawful and wrongful conduct, [P]laintiffs were forced to seek the protection of the United States bankruptcy Court in the Central District of Utah." According to Wells Fargo, "[a]s the Complaint alleges that Plaintiffs were forced to seek bankruptcy protection as a direct result of Wells Fargo's alleged TILA violations, the TILA violations complained of therefore must have occurred before Plaintiffs filed bankruptcy." Taking the date of Plaintiffs' last bankruptcy petition, which Plaintiffs filed on October 20, 2003, Wells Fargo asserts that the limitations period for Plaintiffs to bring their claim expired more than 17 months ago. Further, Wells Fargo contends that even if the statute of limitations was tolled during the pendency of the bankruptcy proceeding, under 11 U.S.C. § 108(a), Plaintiffs were required to file their claim "before the later of the end of the limitations period, or two years after the order for relief." Wells Fargo submits that Plaintiffs filed their last bankruptcy petition on October 20, 2003, thus setting the deadline for any Truth in Lending Act claim at October 20, 2005. Because Plaintiffs did not file their Complaint until March 16, 2006, Wells Fargo contends the Truth in Lending Act claim is untimely. The Court, however, finds Wells Fargo's argument unpersuasive at this juncture.

As Plaintiffs point out, their Complaint alleges that Wells Fargo's violations of the Truth in

4

Lending Act occurred "prior to and after November 14, 2000." Based on the face of Plaintiffs' Complaint, the Court cannot say, as a matter of law, that Plaintiffs' Truth in Lending Claim falls outside of the applicable limitations period.

C.   Venue

Third, Wells Fargo contends that the Northern District of California is not the proper venue for this action. While Wells Fargo raises this challenge, its supporting argument goes to whether its act of designating an agent to receive service of process in California constituted a waiver of any challenge to venue in Northern California. In the context of its venue argument, Wells Fargo also contends that, if the Court dismisses Plaintiffs' Truth in Lending Act claim, the only remaining claims are state law claims. Wells Fargo therefore summarily concludes that, "as a practical matter, the proper venue for this action would be the Utah state court system."

Pursuant to 28 U.S.C. § 1391(b), venue in federal question cases is proper in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." For venue purposes, a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Here, Wells Fargo has failed to demonstrate why venue is not proper in the Northern District of California, given Wells Fargo's substantial, continuous, and on-going business in this district. The Court therefore rejects Well Fargo's general venue challenge.[4]

Having found that Wells Fargo's general challenges unavailing, the Court turns to the general requirements for injunctive relief.[5]

---

[4] Wells Fargo has not raised, and the Court therefore fails to address in this Order, any request to transfer venue to the District of Utah pursuant to 28 U.S.C. § 1404(a).

[5] The Court reiterates that, while Wells Fargo raised general challenges going to jurisdiction and venue, it wholly failed to respond to or otherwise address the standard criteria for determining whether a preliminary injunction should issue.

5

D.     Standard for Preliminary Injunction

The criteria for obtaining a preliminary injunction are well-settled. "Traditionally [courts] consider (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief." *Miller*, 19 F.3d at 456. "The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." *Id.* As the Ninth Circuit explained, "[t]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

1.     Likelihood of Success on the Merits

In their Complaint, Plaintiffs have alleged that Wells Fargo wrongfully assessed interest and penalties based on Wells Fargo's erroneous handling of a $13,603.07, which was to be applied to bring Plaintiffs' loan current, including monthly payments, real property taxes, late fees, and penalties. Although Wells Fargo initially credited Plaintiffs' account $12,715.61 on January 17, 2001, Wells Fargo reversed the payment on February 2, 2001, and thereafter initiated a foreclosure action. Plaintiffs also aver that Wells Fargo did not re-credit the $13,603.07 until July 3, 2003. However, Plaintiffs aver that Wells Fargo failed to credit Plaintiffs for the late fees, attorneys' fees, and foreclosure fees that Wells Fargo imposed as a result of not crediting the loan with the $13,603.07 payment. Plaintiffs aver the every statement that Wells Fargo has issued since that time has included these fees.

Based on these allegations and statements by Plaintiffs, the Court finds that Plaintiffs have sufficiently demonstrated a likelihood of succeeding on their breach of contract and Truth in Lending Act claims based on Wells Fargo's failure to properly credit their account and wrongful assessment of fees, interest, and penalties without a legal or contractual basis.

2.     Possibility of Irreparable Harm

Evaluating the second prong, the Court finds that given that Plaintiffs' request for preliminary injunctive relief centers on real property, which is inherently unique, foreclosure of Plaintiffs rights in

6

this property would cause immediate and irreparable harm that could not be remedied by money damages. This factor therefore weighs in Plaintiffs' favor.

        3.      Balance of Hardships

Assessing this factor, the Court finds that the balance of hardships weighs in Plaintiffs' favor. As indicated above, Plaintiffs are facing loss of their real property. If Plaintiff were to prevail on their claims in this case, they face the possibility that, by that time, Wells Fargo may have already sold their property. Wells Fargo, on the other hand, has the right to the payment required under their loan contract with Plaintiffs. Balancing Wells Fargo's right to proceeds under the loan contract against Plaintiffs' potential loss of real property, the Court finds that the balance of hardships tips in Plaintiffs' favor.

        4.      Public Interest

Because Plaintiffs face the risk of losing real property based on Wells Fargo's purported mishandling of Plaintiffs' payments, the Court finds that the public interest in protecting real property from erroneous deprivation weighs in Plaintiffs' favor.

IV.    Conclusion

In sum, the Court finds that Plaintiffs have sufficiently shown the existence of serious questions going to the merits, that the balance of hardships tips sharply in their favor, and at least a fair chance of success on the merits. Accordingly, the Court **GRANTS** Plaintiffs' request for a preliminary injunction enjoining Wells Fargo from foreclosing on Plaintiffs' property. The Court further directs Plaintiffs to post a $5,000 bond with the Clerk of the Court by 10:00 a.m. on Monday, May 1, 2006. Plaintiffs' failure to comply with the bond requirement by this deadline will result in lifting of the injunction.

**IT IS SO ORDERED.**

Dated: April 27, 2006.

                                        MARTIN J. JENKINS
                                        UNITED STATES DISTRICT JUDGE