1
2
3
4
5
6
7
8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   JEFFREY HEIL,                              No. C06-02002 MJJ

12              Plaintiff,                      **ORDER RE DEFENDANT'S MOTION
                                                TO TRANSFER**
13         v.

14   WELLS FARGO BANK,

15              Defendant.
     _____/
16

17         Pending before the Court is Defendant Wells Fargo Bank, N.A.'s Motion to Transfer for

18   Convenience (Doc. #76).  Plaintiffs Jeffrey Heil and Paul Heil have filed an Opposition (Doc. #81), to

19   which Defendant filed a Reply (Doc. #86).  For the following reasons, the Court **GRANTS** Defendant's

20   Motion.

21   I.    Background

22         On March 16, 2006, Plaintiffs filed a Complaint against Wells Fargo.  (Doc. #1.)  In their

23   Complaint, Plaintiffs allege that they entered into a construction loan contract with First Security Bank

24   of Utah to finance the building of a home on a twenty acre sub-parcel of Plaintiffs' 300-acre parcel of

25   land in Utah.  On January 13, 1995, Plaintiffs re-financed the First Security loan with Crossland

26   Mortgage, Inc.  Both loans were secured by a deed of trust on a 20-acre parcel of Plaintiffs' land.  In

27   November 2000, Crossland merged with Wells Fargo, and Plaintiffs thereafter made their loan payments

28   to Wells Fargo.  According to Plaintiffs, during this time, "[D]efendant paid real property taxes to the

     Iron County Assessor's Office which were not in fact owed; paid real property taxes to the Iron County

**United States District Court**
For the Northern District of California

1   Assessor's Office in excess of [D]efendant's secured interest; paid insurance on the [s]ubject [p]roperty

2   when there was already insurance in place on the [s]ubject [p]roperty; improperly charged [P]laintiffs[]

3   late fees, interest and penalties without a legal, factual, or contractual basis; refused to apply payments

4   made by [P]laintiffs to [P]laintiffs' account and improperly charged [P]laintiffs late fees, interest and

5   penalties on the payments [D]efendant refused to apply to [P]laintiffs' account." (Compl. ¶11.)   At

6   some point thereafter, Wells Fargo initiated a foreclosure action on Plaintiffs' property.  Plaintiffs then

7   filed for bankruptcy in the United States Bankruptcy Court in the Central District of Utah.  Based on

8   these events, Plaintiffs assert claims against Wells Fargo for: (1) breach of contract; (2) fraud; (3)

9   negligence; (4) breach of the covenant of good faith and fair dealing; and (5) violations of the Truth in

10  Lending Act, 15 U.S.C. § 1601.

11       Defendant now requests that the Court transfer this action from this District to the District of

12  Utah pursuant to 28 U.S.C. § 1404(a).

13  II.    Legal Standard - Motion to Transfer

14       Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of

15  justice, a district court may transfer any civil action to any other district or division where it might have

16  been brought."  In reviewing a motion to transfer, the Court may consider the following factors to

17  determine whether transfer is appropriate: (1) the location where the relevant agreements were

18  negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's

19  choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the

20  plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two

21  forums; (7) the availability of compulsory process to compel attendance of unwilling non-party

22  witnesses; and (8) the ease of access to sources of proof.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d

23  495, 498 (9ᵗʰ Cir. 2000); *Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1043 (D. Ariz. 2004).  As the party

24  requesting the transfer, Defendant bears the burden of proving that Utah is the more appropriate forum

25  for this action.  *See Jones*, 211 F.3d at 499; *Warfield*, 346 F. Supp. 2d at 1043.  Evaluating the facts of

26  the instant case under these factors, the Court finds Defendant's request to transfer the action to Utah

27  to be well-taken.

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

III.     Discussion

    A.     Availability of Utah as an Alternate Forum

    Section 1404(a) only authorizes transfer of an action "to another district or division where it might have been brought."  Here, the parties agree that Plaintiffs may have properly filed this lawsuit in Utah.  (*See* Motion at 4-6; Opp. at 5.)  Thus, because venue is also proper in Utah, this initial requirement is met.

    B.     Analysis of the Factors

    1.     Location Where the Relevant Agreements Were Negotiated and Executed

    The first factor the Court considers is the location where the operative contracts were negotiated and executed.  Defendant contends that Plaintiffs executed all of the loan documents which underlie their claims in Utah.  Plaintiffs do not dispute this assertion.  Thus, because the loan documents were executed in Utah, rather than California, this first factor weighs in favor of transfer.

    2.     State Most Familiar With the Governing Law

    Next, the Court must examine whether California, Utah, or federal law governs Plaintiffs' claims.  As detailed above, Plaintiffs have asserted one claim for violation of the Truth in Lending Act, and claims for breach of contract, fraud, negligence, and breach of the covenant of good faith and fair dealing - all of which arise under state law.  Defendant contends the loan agreements provide that federal law and the laws of the state of Utah are to be applied in any dispute.  Looking at the Construction Loan Deed of Trust and Security Agreement between Plaintiffs and First Security Bank, Section 14.0, entitled "Governing Law and Severability", states: "Except as to any rule or law requiring the application of the laws of another jurisdiction, this Deed of trust shall be governed by the laws of the State of Utah."  Additionally, the refinancing agreement between Plaintiffs and Crossland Mortgage provides at paragraph 15: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located."  Accordingly, to the extent that Plaintiffs are claiming that Defendant's conduct breached terms of the loan agreements and the covenant of good faith and fair dealing, such claims are governed by Utah law.  Thus, this factor also supports transfer.

    3.     Plaintiffs' Choice of Forum

    Generally, a plaintiff's choice of forum is afforded substantial weight.  *Carolina Cas. Co. v. Data*

*Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001). "But, '[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence *or* where the forum chosen lacks a significant connection to the activities alleged in the complaint.'" *Id.* (quoting *Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185 at *1 (N.D. Cal. 2001)) (emphasis added).

Here, Plaintiffs reside in California. To that extent, their choice to file this lawsuit in the Northern District is entitled to some deference. However, as Defendant points out, Plaintiffs' choice of forum lacks a significant connection with the events alleged in their Complaint. Notably, all of the events which form the basis for Plaintiffs' lawsuit occurred in Utah, not California. As indicated above, the loan agreements which are the basis for Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims were executed in Utah. Additionally, the property that is the subject of the agreements is located in Utah. A substantial portion of Defendant's alleged wrongful conduct - namely, the payment of property taxes that were not due - was to the Iron County Assessor's Office. Based on these factors, there is no apparent connection between California - and particularly, the Northern District - and the facts giving rise to Plaintiffs' claims. As a result, Plaintiffs' choice of forum is not entitled to deference.

4.      Parties' Respective Contacts with the Forum

In their Complaint, Plaintiffs allege that they reside in California. However, it is unclear whether they reside in the Northern District. Moreover, aside from residing in California, there is nothing in the parties' briefs or the Complaint demonstrating any other connection between Plaintiffs and the Northern District. At the same time, Plaintiff own property - namely, the Property that is at the heart of this lawsuit - in Utah. Plaintiffs also engaged in financial transactions with Defendants in Utah. Thus, Plaintiffs arguably have just as strong a connection with Utah as they do with California.

As to Defendant, it is undisputed that Defendant Wells Fargo is a national corporation, which transacts business in both Utah and California. However, it is undisputed that all of Defendant's allegedly wrongful conduct occurred in Utah, not California. Thus, while Defendant may have a presence in California, it is the Utah office, rather than the national corporate entity, which is the focus of this litigation.

United States District Court
For the Northern District of California

4

United States District Court

For the Northern District of California

1   Looking at both parties' respective contacts with California and Utah, the Court finds that for

2   purposes of this lawsuit, the parties have stronger contacts with Utah than California.  This factor

3   therefore weighs in favor of transfer to Utah.

4        5.      Contacts Relating to the Plaintiffs' Cause of Action in the Chosen Forum

5   The Court must next assess contacts relating to Plaintiffs' Complaint in the Northern District.

6   As the discussed in the preceding sections, none of the conduct or contracts that form the basis of

7   Plaintiffs' Complaint occurred in the Northern District of California.  Thus, the Court finds that this

8   factor weighs in favor of transfer.

9        6.      Differences in the Costs of Litigation in the Two Forums

10  Looking at the difference in the cost of litigating this lawsuit in Utah versus California, there is

11  no evidence of any appreciable difference in the cost of litigation between the two forums.  Thus, this

12  factor weighs in neither party's favor.

13       7.      Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

14

15  The Court next looks at whether compulsory process is available in both the Northern District

16  and Utah.  Defendant contends that it intends to subpoena witnesses from the Iron County Assessor's

    Office and from The Village Bank in St. George, Utah.  According to Defendant, these witnesses are

17  beyond this Court's subpoena power.  Plaintiffs, however, argue that "there are established procedures

18  for subpoenaing documents from out-of-state."  (Opp. at 4.)  To the extent Defendant seeks to notice

19  and depose the witnesses in Utah, this Court's subpoena power will suffice.  However, for purposes of

20  appearing at trial, Defendant is correct that this Court lacks subpoena power with respect to those

21  witnesses in Utah.  *See* Fed. R. Civ. P. 45(b)(2).  Thus, the Court finds that this factor weighs slightly

22  in Defendant's favor.

23       8.      Ease of Access to Sources of Proof

24  Finally, the Court must analyze whether the parties' evidence is more readily available in the

25  Northern District of California or in the District of Utah.  Defendant asserts that several third party

26  witnesses, including employees of the Iron County Assessor's Office,  The Village Bank, and the Iron

27  County Building Inspector, as well as relevant records relating to the transaction, are all located in Utah.

28  Defendant further argues that these witnesses would have to travel to California to testify if this case

5

United States District Court
For the Northern District of California

1   proceeds to trial.  Plaintiffs counter that Defendant already has copies of the relevant documents in this

2   matter, and that the non-party witnesses Defendant has identified are not in fact necessary witnesses for

3   Defendant.  To the extent that Plaintiffs are alleging that Defendant wrongfully paid taxes that were not

4   owed, the Court agrees with Defendant that employees of the Iron County Assessor's office may be

5   relevant witnesses.  Moreover, as Defendant points out, because the entities that Plaintiffs dealt with are

6   all located in Utah, the relevant documents relating to those transactions are also in Utah.  While there

7   is no evidence that the documentary evidence in this matter will be voluminous, it is undisputed that any

8   records relating to the amount of taxes owned on the Property and when and if such taxes were paid

9   would all be kept in Utah with those entities.  In other words, because all of the events give rise to

10  Plaintiffs' lawsuit occurred in Utah, rather than California, it is fair to conclude that all of the witnesses

11  and record evidence the parties may seek in discovery will be in Utah.  Indeed, aside from Plaintiffs,

12  who reside in California, there is nothing indicating that any witness or record evidence relevant to this

13  case is located in the Northern District.  Accordingly, the Court finds that this factor weighs in favor of

14  transfer to Utah.[1]

15       B.       Summary

16       Taken together, the Court finds that the lack of a connection between the parties and the conduct

17  giving rise to Plaintiffs' claims with the Northern District of California, as well as the location of

18  evidence, and the contractual choice of law clauses selecting Utah law, all weigh heavily in favor of

19  transferring this action to the District of Utah.  The Court therefore concludes that for the convenience

20  of the parties and witnesses, and in the interest of justice, transfer of this matter from the Northern

21  District of California to the District of Utah is appropriate.

22

23

24

25

26       [1]In their Opposition, Plaintiffs urge the Court to deny Defendant's Motion, in part, because if Court transfers the
   matter, "[P]laintiffs will be forced to litigate their claims in a state which [P]laintiffs assert is biased against their interests."
27  As Plaintiffs acknowledge, the Court does not consider such speculative charges of local prejudice when considering a motion
   to transfer.  *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 89 F.R.D. 497, 502-512 (C.D. Cal. 1981).  Rather, only
28  evidence of actual prejudice and inability to obtain fair jurors are relevant.  *See id.*; *Wash. Pub. Util. Group v. United States
   Dist. Court*, 843 F.2d 319, 321 (9th Cir. 1988).

6

IV.     Conclusion

       For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Transfer (Doc. #76). Further, because the Court finds that the parties have sufficiently briefed this matter, and that oral argument would not aid the Court in its decision, the Court **VACATES** the hearing set for August 22, 2006.

**IT IS SO ORDERED.**


Dated: August 18, 2006

                                        _____
                                        MARTIN J. JENKINS
                                        UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

7